Wkight, J.,
delivered the opinion of the Court.
This is an action of ejectment for the recovery of two tracts of land in Weakley county: one for 170 acres, and the other for 51f acres.
The plaintiffs concede they havé no title to the latter tract, and the contest is, as to the title of the 170 acres.
*534 The Circuit Judge held, that the defendants, also, had the better title to this tract.
In this we think he erred. We are satisfied that one Howard, under- the act of 1829, ch. 22, and prior to the year 1831, had an occupant right to this land; and that in February of that year, he entered the same in the proper office by a special occupant entry, as required by that act and the act of 1826, ch. 7; that said occupant right was preserved by said Howard and his assignees until the year 1838, when James H. Moran, the ancestor of the plaintiffs, become the owner thereof by assignment; and that upon his death, the same came by descent to the plaintiffs, who are his heirs at law; and that they caused the said tract of land to be granted to them, by the State of Tennessee, on the 1st of May, 1854.
The defendants claim under a general entry made the 20th of October, 1852, and a grant thereon by the State, of date the 1st of February, 1853; and if it were not for the existence of the occupant right of the plaintiffs, would have the better title. But we think the grant and entry under which the defendants claim, so far as they conflict with the entry of Howard, absolutely void, because made in violation of this occupant right.
The act of 1851, ch. 326, gave to the enterers of land in any of the land offices in this State, and to their assignees, time, until the 1st day of March, 1854, to; have their entries surveyed and granted, and made it unlawful for any person to enter any land on which another resided, or which was cultivated by another, or which had been previously entered, until such person had given, in writing, at least thirty days previous notice to *535 the person residing on or cultivating said land, or to the previous enterer, or his assignee of his intention to ' enter the same; and any entry made, or grant obtained contrary to the provisions of the act are declared void. Etheridge, who made the entry and obtained the grant relied on by the defendants, did not give any notice to the assignees of the previous enterer. And it is now assumed for the defendants, that this aet of Assembly has no application to an entry founded upon an occupant right, and which could never be the foundation of a grant; but was only intended to protect general entries, founded on military warrants, or entries made after the vacant lands in Tennessee were ceded to the State, by Congress, in 1841, by the payment of the fees of office, or such other consideration as the Legislature, in the disposition of these lands, had from time to time required. That a grant could issue upon no other class of entries, and none other could have been intended. We do not assent to this argument. The language of the act is general, and embraces all land which had been previously entered under authority of law, no matter when, and without any distinction as to the origin or nature of the right of entry; and we are satisfied it applies to an occupant enterer, and protects him as fully as it does the general enterer. It embraces all entries. And unless it can be shown that the location made by Howard is not, in any legal sense, an entry, the plaintiffs’ rights are secured.
The aet of 1829, ch. 7, sec. 8, provides that where any of said occupants may wish to have their lands laid down on the general plan, as directed in the aet, they shall file with the surveyor, a location in legal form for *536 the same, and it shall he the duly of the surveyor to-record it in a book to fee kept by him for that purpose. And what is a location thus filed, received and recorded, but an entry? 2 Meigs’ Dig. 669, 670. It was recognized fey the Courts, at an early day, as an entry. Pettyjohn v. Akers, 6 Yer., 448.
It is true, that prior to the Cession Act of 1841, a grant could not issue unless based upon a warrant; and since that act, upon the payment of the fees of office,, or such other consideration as had been prescribed by law. But this does not prove that a new or second entry is necessary, any more than that an additional survey is required where a sufficient one has already been made. Act of 1829, ch. 22, sec. 16. Why make an additional or second entry on the same land, when the one already made is special and valid ? But, if the second -entry be necessary, the case is still within the act, because it gives further time to procure grants upon all entries, and of necessity includes everything proper or requisite to be done, in order to obtain the grant.
We are to observe, also, that the act not only prohibits an entry and grant upon lands appropriated by a previous entry, but also upon land on which another resides, or which is cultivated by another. This provision is to be found in the act of 1824, ch. 22, sec. 6, and is noticed in Den v. Nixon, 10 Yer., 518; and there can be no question, that the draftsman of the act of 1851 was familiar with the course of legislation and decision-in the State upon this subject. This being so, it can hardly be supposed that an occupant entry was not to-share in the protection afforded by the act. These rights have always been guarded by the Legislature with *537 much care. They included some of the most valuable property in the State, an.d since the year 1819, at least, it has been unlawful for a general enterer to interfere with them, unless it be during some hiatus in the law by which they were secuyed.
It is obvious, that these considerations are not reckoned by the fact that the plaintiffs, as the heirs of James H. Moran, upon the payment of the fees of office, for the purpose of procuring their grant, on the 22d of October, 1853, caused a second entry to be made of this land. And they are fortified by the fact, that in 1846, the survey then made of this land, recites that it was made for the plaintiffs as the heirs of James H. Moran, assignee of Littleton Howard, as their occupant claim; and this survey is recited in the plaintiffs grant. Kelly v. Hare, 1 Hum., 163, 166.
The provisions of the act of 1851 are extended in the act of 1853 to the 1st of April, 1856; and the protection has been continued by subsequent legislation; so that at no time since the 13th of November, 1851, could said Etheridge have made an entry, or have obtained a grant for this land. The plaintiffs’ grant, therefore, in 1854, gave them a perfect legal title, the entry and grant of Etheridge being void. Kelly v. Hare, 1 Hum., 163, 166; Patterson et al. v. McCutchen et al., 5 Hum., 322, 328.
i The right of James • H. Moran and his heirs to this occupancy, was protected without actual residence, he being the assignee of the original occupant. Act of 1837, ch. 1, secs. 17 and 18.
Neither is there anything in the argument, that James H. Moran had no such interest in this land, as *538 that it could be transmitted by inheritance to his heirs. There can, we apprehend, be no question that so soon as the public lands were relinquished to this State by Congress, the occupanc laws, ■ previously enacted, conferred upon those who had complied with their provisions an inheritable interest in the land. Knox v. Thomas, 5 Hum., 573. It has been decided since that act, in an unreported case, by our predecessors, to be such an equitable estate as could be subjected, in equity, to debts. The case of Brown v. Massey, 3 Hum., 470, arose before the relinquishment. But if this were not so, an inheritable quailty was imparted to these lands by the act of 1845, ch. 8, sec. 4. And there can he no doubt, as we think, that the plaintiffs stood in the shoes of their ancestor and were as fully secured and protected as he was.
The judgment of the Circuit Court is reversed, and a new trial granted.